**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| NICHOLAS GRAY, *et al.*, | ] | |
| | ] | |
| *Plaintiff*, | ] | |
| | ] | |
| v. | ] | **C. A. NO. 4:08-cv-3369** |
| | ] | |
| PASHA ENTERTAINMENT GROUP, LLC and MICHAEL WARREN POWERS, | ] | |
| | ] | |
| *Defendants*. | ] | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS AND INCORPORATED BRIEF IN SUPPORT**

**BRUCKNER BURCH PLLC**

Michael K. Burke
State Bar No. 24012359
S.D. of Texas No. 24356
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
mburke@brucknerburch.com

- and -

**DEBES LAW FIRM**

Robert R. Debes, Jr.
Texas Bar No. 05626150
S.D. of Texas No. 12308
17 South Briar Hollow Lane, Ste. 302
Houston, Texas 77027
(713) 623-0900 – Telephone
(713) 623-0951 – Facsimile
bdebes@debeslaw.com

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..... **iii**

**II. FACTUAL BACKGROUND** ..... **1**

**III. ARGUMENT** ..... **4**

**A. Summary Judgment Standard** ..... 4

**B. Plaintiffs Were Employees And Not Independent Contractors** ..... 4

*1. The Significance of the Employee/Independent Contractor Distinction* ..... 4

*2. The Test Courts Employ to Answer the Employee/Independent Contractor Question* ... 6

*3. The Relevant Factors Compel A Finding That Plaintiffs Were Employees* ..... 6

(a). Defendants exercised all meaningful control over the business ..... 6

(b). Plaintiffs did not invest in the business ..... 7

(c). Only Defendants stood to make profits or sustain losses from the business ..... 7

(d). Plaintiffs' jobs did not require specialized skill ..... 8

(e). Permanency of the relationship ..... 9

(f). Plaintiffs performed an integral function of Defendants' business ..... 10

*4. Powers' Position That Plaintiffs Agreed To Earn No Wages Is Meaningless* ..... 11

**C. Powers Was An "Employer" Along With Pasha** ..... 11

*1. Powers' Involvement With Pasha* ..... 11

*2. Powers' Involvement With Plaintiffs* ..... 13

*3. Powers' Actions Establish He Was Plaintiffs' Employer* ..... 13

(a). Powers' financial control over the business is almost conclusive in itself ..... 14

(b). Powers was sufficiently involved in Plaintiffs' employment ..... 15

**D. Defendants Violated The FLSA's Minimum Wage Provisions** ..... 16

**E. Because Defendants Did Not Keep Accurate Records Of The Hours Plaintiffs Worked, The Court Should Credit Plaintiffs' Testimony** ..... 16

**F. Plaintiffs' Damages** ..... 17

*1. Unpaid Minimum Wages* ..... 17

(a). Nicholas Gray ..... 17

(b). Christi Fisher ..... 18

(c). Jessica Nichols ..... 18

*2. Liquidated Damages* ..... 19

**IV. CONCLUSION** ........................................................................................................ **19**

**CERTIFICATE OF SERVICE** ........................................................................................ **20**

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ..... 17

*Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728 (1981) ..... 11

*Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir. 1985) ..... 16

*Bernard v. IBP, Inc.*, 154 F.3d 259 (5th Cir. 1998) ..... 19

*Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042 (5th Cir. 1987), *cert. denied*, 484 U.S. 924 (1987) ..... 8, 9

*Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945) ..... 11

*Broussard v. Parish of Orleans*, 318 F.3d 644 (5th Cir.2003) ..... 4

*Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2nd Cir.1984) ..... 5

*Castillo v. Givens*, 704 F.2d 181 (5th Cir. 1983) ..... 9

*Cromwell v. Driftwood Elec. Contractors, Inc.*, 2009 WL 3254467 (5th Cir. Oct. 12, 2009) .. 6, 10

*Dole v. Simpson*, 784 F.Supp. 538 (S.D.Ind. 1991) ..... 14

*Dole v. Snell*, 875 F.2d 802 (10th Cir. 1989) ..... 10

*Donovan v. Agnew*, 712 F.2d 1509 (1st Cir.1983) ..... 14

*Donovan v. Grim Hotel Co.*, 747 F.2d 966 (5th Cir.1984) ..... 15

*Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528 (5th Cir.1982) ..... 15

*Donovan v. Sabine Irrigation, Co.*, 695 F.2d 190 (5th Cir. 1983), *cert. denied*, 463 U.S. 1207 (1983)) ..... 5

*Doty v. Elias*, 733 F.2d 720 (10th Cir. 1984) ..... 7, 9

*Fahs v. Tree-Gold Co-op Growers, Inc.*, 166 F.2d 40 (5th Cir. 1948) ..... 5

*Goetz v. Synthesys Techs., Inc.*, 286 F.Supp.2d 796 (W.D.Tex. Sep. 25, 2003) ..... 14, 15

*Gustafson v. Bell Atlantic Corp.*, 171 F.Supp.2d 311 (S.D.N.Y. 2001) ..... 5

*Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261 (5th Cir. 1987) ..... 4

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2nd Cir. 1999) ..... 4

*Hopkins v. Cornerstone America*, 545 F.3d 338 (5th Cir. 2008) ..... 5, 6, 7, 10

*Martin v. Priba Corp.*, 1992 WL 486911 (N.D.Tex. Nov. 6, 1992) ..... 9

*McLaughlin v. Seafood, Inc.*, 861 F.2d 450 (5th Cir. 1988) ..... 9

*Mednick v. Albert Enters., Inc.*, 508 F.2d 297 (5th Cir. 1975) ..... 5, 9

*Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105 (5th Cir.1961) .......... 9

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) .......... 5

*Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999) .......... 19

*Quintanilla v. A & R Demolitina, Inc.*, 2005 WL 2095104 (S.D.Tex. Aug. 30, 2005) .... 13, 15, 16

*Reich v. Circle C. Invests., Inc.*, 998 F.2d 324 (5th Cir. 1993) .......... 4

*Reich v. Priba Corp.*, 890 F.Supp. 586 (N.D.Tex. 1995) .......... 5, 7, 8, 9, 16

*Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947) .......... 5

*Secretary of Labor v. Lauritzen*, 835 F.2d 1529 (7th Cir. 1987) .......... 11

*Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290 (1985) .......... 11

*U.S. v. Rosenwasser*, 323 U.S. 360 (1945) .......... 5

*Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308 (5th Cir. 1976), *cert. denied*, 429 U.S. 826 (1976) .......... 5, 8, 9

*Villa v. Waters*, 2009 WL 1650482 (W.D.Tex. Jun. 11, 2009) .......... 4

*Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185 (5th Cir. 1979) .......... 4

**STATUTES**

29 U.S.C. § 203(d) .......... 13, 15

29 U.S.C. § 206(a) .......... 16, 17

29 U.S.C. § 216(b) .......... 17, 19

**REGULATIONS**

29 C.F.R. § 791.2(b) .......... 14

**RULES**

FED. R. CIV. P. 56(c) .......... 4

**LEGISLATIVE MATERIALS**

81 Cong.Rec. 7657 .......... 5

Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) .......... 17

## I. SUMMARY

Defendants, Pasha Entertainment Group, LLC (Pasha) and Michael Warren Powers (Powers) (collectively Defendants) operated a bar called Pashaa Ultra Lounge (the Bar) in Houston, Texas. Nicholas Gray (Gray), Jessica Nichols (Nichols) and Christi Fisher (Fisher) (collectively Plaintiffs) worked as bartenders at the Bar. Defendants did not pay Plaintiffs any wages at all for working as bartenders. Rather, Plaintiffs worked for tips and tips alone.

On the undisputed facts and admissions, Defendants were Plaintiffs' employers under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the FLSA).[1] Defendants' failure to pay wages to Plaintiffs violated the minimum wage provisions of the FLSA. As a result, Plaintiffs are entitled to recover their unpaid wages, liquidated damages, attorneys' fees and costs as a matter of law. For the reasons that follow, therefore, the Court should grant Plaintiffs' motion for summary judgment.

## II. FACTUAL BACKGROUND

The Bar was opened in Houston in February 2007. *See* Exhibit 1, Excerpts from Deposition of Nicholas Gray, p. 19, ll. 2-5 (hereinafter cited "Gray Depo."). Pasha was formed for the sole purpose of opening and operating the Bar. Exhibit 2, Excerpts from Deposition of Michael Warren Powers, p. 5, ll. 3-22 (hereinafter cited "Powers Depo."). At all times, Powers was an officer of Pasha. Powers Depo., p. 5, ll. 3-12. Powers was also Pasha's largest single investor. Powers Depo., p. 11, l. 22-p. 12, l. 4. Not surprisingly, Powers instructed the Bar's management to provide him with nightly numbers of the Bar's gross sales. Powers Depo., p. 23, l. 10-p. 24, l. 5.

---

[1] The Court has already granted an interlocutory default judgment as to liability against Pasha [Doc. 16].

In addition to being an officer of Pasha and its largest investor, Powers supervised the build-out (including the look and interior design) of the Bar. Powers Depo., p. 7, ll. 12-23. Powers actively participated in hiring the Bar's first general manager, John W. "Julian" Ritchey, Jr. (Ritchey). Powers Depo., p. 8, ll. 2-23. Powers also actively participated in the decision to fire Ritchey because "he was too expensive. The club wasn't making money." Powers Depo., p. 8, l. 10-p. 9, l. 7. Powers then actively took part in the hiring of Gray as Pasha's second general manager. Powers Depo., p. 83, l. 7-p. 84, l. 10. Powers and Pasha's other officers specifically vested both general managers with the power and authority over further personnel matters, including hiring, firing and compensation of bartenders. Powers Depo., p. 7, ll.5-19. Ultimately, Powers and Pasha's other officers decided to shut the business down in September of 2008. Powers Depo., p. 14, ll. 2-7; p. 86, l. 15-p. 87, l. 21.

Defendants owned the Bar's lease. Powers Depo., p. 75, l. 23-p. 76, l. 9. Defendants controlled access to the Bar by only issuing keys to Powers, Pasha's other officers and the general manager. Powers Depo, p. 35, l. 21- p. 36, l. 14. Defendants set the Bar's hours of operation. Exhibit 3, Declaration of Nicholas Gray, ¶ 6 (hereinafter cited "Gray Dec.); Exhibit 4, Declaration of Christi Fisher, ¶ 6 (hereinafter cited "Fisher Dec."); Exhibit 5, Declaration of Jessica Nichols, ¶ 6 (hereinafter cited "Nichols Dec."). Pasha owned part of the sound system installed at the Bar. Powers Depo., p. 29, ll. 6-8. Defendant owned the fixtures and equipment (*e.g.*, ice machine, "jockey boxes," glasses). Powers Depo., p. 29, l. 9-p. 30, l. 5. Defendants owned the alcohol inventory the bartenders used to make drinks for the Bar's customers. Powers Depo., p. 29, ll. 11-13.

Plaintiffs worked at the Bar as bartenders. Exhibit 3, Declaration of Nicholas Gray, ¶ 2 (hereinafter cited "Gray Dec.); Exhibit 4, Declaration of Christi Fisher, ¶ 2 (hereinafter cited

"Fisher Dec."); Exhibit 5, Declaration of Jessica Nichols, ¶ 2 (hereinafter cited "Nichols Dec."). Gray worked at the Bar as a bartender from February 2007 to September 2007. Gray Dec., ¶ 2.[2] Nichols worked as a bartender at the Bar from . Nichols Dec., ¶ 2. Fisher worked at the Bar as a bartender from March 15, 2007 until September 1, 2008. Fisher Dec., ¶ 2. Plaintiffs were never told that Defendants did not consider them employees. Gray Dec., ¶ 10; Fisher Dec., ¶ 9; Nichols Dec., ¶ 9.[3] Defendants never paid any wages at all to Plaintiffs for the hours they spent working as bartenders. Powers Depo., p. 51, ll. 3-14; p. 82, l. 24-p. 83, l. 6; Gray Dec., ¶ 3; Fisher Dec., ¶ 3; Nichols Dec., ¶ 3. Rather, Plaintiffs worked solely for the tips they earned from the Bar's customers. Powers Depo., p. 51, ll. 3-14; p. 82, l. 24-p. 83, l. 6; Gray Dec., ¶ 3; Fisher Dec., ¶ 3; Nichols Dec., ¶ 3. None of Plaintiffs had any money invested in Pasha or in the Bar. Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6. None of Plaintiffs shared in the profits or losses from the business. Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6.

Defendants did not keep records of the hours that Plaintiffs worked. Gray Dec., ¶ 4; Fisher Dec., ¶ 4; Nichols Dec., ¶ 4. As a bartender, Gray worked approximately twenty-one hours per week. Gray Dec., ¶ 5. Thus, during the thirty-one weeks he worked as a bartender, Gray worked approximately 651 total unpaid hours. Gray Dec., ¶ 5. Fisher worked approximately nineteen and-a-half hours per week. Fisher Dec., ¶ 5. Thus, during the seventy-five weeks she worked for Defendants, Fisher worked approximately 1462.5 unpaid hours. Fisher Dec., ¶ 5. Nichols worked approximately seven and-a-half hours per week. Nichols Dec., ¶ 5. During the fourteen weeks she worked for Defendants, Nichols worked approximately 97.5 unpaid hours. Nichols Dec., ¶ 5.

---

[2] Gray also worked at the Bar as general manager from March of 2008 to September of 2008. Gray Dec., ¶ 2. Gray does not make any claim in this lawsuit for the period of time he was Pasha's general manager. *Id.*

[3] In fact, Defendants gave Fisher a recommendation, commenting that she "is a loyal and dependable employee who would be an asset to any organization." Fisher Dec., Exhibit A.

## III. ARGUMENT

### A. Summary Judgment Standard

Courts should grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Broussard v. Parish of Orleans,* 318 F.3d 644, 650 (5th Cir.2003) (internal citations omitted). A dispute about a material fact is "genuine" if there is enough evidence for a reasonable jury to return a verdict in favor of the non-moving party. *Broussard*, 318 F.3d at 650. When deciding a motion for summary judgment, courts review all factual questions in the light most favorable to the nonmovant. *Id.*

### B. Plaintiffs Were Employees And Not Independent Contractors

#### *1. The Significance of the Employee/Independent Contractor Distinction*

Plaintiffs allege they were Defendants' employees while Powers argues that Plaintiffs were independent contractors. *See* Doc. 12, ¶ 5.[4] The distinction is significant. Only "employers" as defined by the FLSA may be liable for FLSA violations. *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2nd Cir. 1999); *Villa v. Waters*, 2009 WL 1650482, *2 (W.D.Tex. Jun. 11, 2009). Similarly, only "employees" (as opposed to "independent contractors") are entitled to protection under the FLSA. *Halferty v. Pulse Drug Co., Inc.*, 821 F.2d 261, 264 n.2 (5th Cir. 1987) (citing *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1188 (5th Cir. 1979)).

When making this distinction, courts must be mindful of Congress' remedial intent in enacting the FLSA. *Reich v. Circle C. Invests., Inc.*, 998 F.2d 324, 329 (5th Cir. 1993) (citing *Donovan v. Sabine Irrigation, Co.*, 695 F.2d 190, 194 (5th Cir. 1983), *cert. denied*, 463 U.S. 1207

---

[4] Pasha has admitted that it was an "employer" and that Plaintiffs were its "employees" by defaulting.

(1983)). The FLSA is intended to protect those whose livelihood is dependent upon finding employment in the business of others. *Usery v. Pilgrim Equipment Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976), *cert. denied*, 429 U.S. 826 (1976) (quoting *Mednick v. Albert Enters., Inc.*, 508 F.2d 297, 300 (5th Cir. 1975) (quoting *Fahs v. Tree-Gold Co-op Growers, Inc.*, 166 F.2d 40, 44 (5th Cir. 1948)). Therefore, "[a]n employer cannot saddle a worker with the status of independent contractor, thereby relieving itself of its duties under the FLSA, by granting [her] some legal powers where the economic reality is that the worker is not and never has been independently in the business which the employer would have [her] operate." *Reich v. Priba Corp.*, 890 F.Supp. 586, 592 (N.D.Tex. 1995) (quoting *Mednick*, 508 F.2d at 303).

To that end, the terms "employee" and "independent contractor" are not to be construed in their common law senses when used in the context of the FLSA. *Reich v. Priba*, 890 F.Supp. at 592 (citing *Mednick*, 508 F.2d at 299; *Rutherford Food Corp. v. McComb*, 331 U.S. 722 (1947)). The definition of "employee" under the FLSA is particularly broad. *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). In fact, the FLSA's definition of "employee" is "the broadest definition that has ever been included in any one act." *U.S. v. Rosenwasser*, 323 U.S. 360, 363 n. 3 (1945) (citing 81 Cong.Rec. 7657). The FLSA "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." *Nationwide*, 503 U.S. at 326. The test is intended to be broad "so that the [provisions will] have the widest possible impact in the national economy." *Gustafson v. Bell Atlantic Corp.*, 171 F.Supp.2d 311, 324 (S.D.N.Y. 2001) (citing *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2nd Cir.1984)).

2. *The Test Courts Employ to Answer the Employee/Independent Contractor Question*

Courts in the Fifth Circuit consider five non-exhaustive factors in determining whether a worker is an independent contractor or an employee covered under the FLSA: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Cornerstone America*, 545 F.3d at 343 (citations omitted). No single factor is determinative. *Id.* (citation omitted). Instead, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind. *Id.* (citation omitted). The ultimate conclusion that an individual is an employee within the meaning of the FLSA is a legal, and not a factual, determination. *Cromwell v. Driftwood Elec. Contractors, Inc.*, 2009 WL 3254467, *1 (5th Cir. Oct. 12, 2009).

3. *The Relevant Factors Compel A Finding That Plaintiffs Were Employees*

<u>(a). Defendants exercised all meaningful control over the business</u>

Defendants, not Plaintiffs, determined the hours the Bar was open for business. Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6. Plaintiffs did not do any advertising or promotion for the Bar. Gray Dec., ¶ 7; Fisher Dec., ¶ 7; Nichols Dec., ¶ 7. Defendants owned the Bar's lease. Powers Depo., p. 75, l. 23-p. 76, l. 9. Defendants controlled access to the Bar by only issuing keys to Powers, Pasha's other officers and the general manager. Powers Depo, p. 35, l. 21- p. 36, l. 14. Defendants owned the fixtures and equipment (*e.g.*, ice machine, "jockey boxes," glasses). Powers Depo., p.29, l. 9-p. 30, l. 5. Defendants owned the alcohol inventory the bartenders used to make drinks for the Bar's customers. Powers Depo., p. 29, ll. 11-13. Defendants owned at least part of the sound system installed at the Bar. Powers Depo., p. 29, ll.

6-8. Defendants hired the Bar's general managers. Powers Depo., p. 8, ll. 2-23; p. 83, l. 7-p. 84, l. 10. Defendants then vested both of the general managers with staffing responsibility, including authority over Plaintiffs. Powers Depo., p. 46, ll.16-22.

Control over the meaningful aspects of running the business is the key concern. *Cornerstone America*, 545 F.3d at 343. The "meaningful" aspects include: pricing, hiring, firing and advertising,. *Id.* at 343-44. Directing where and when the work is performed are also hallmarks of meaningful control. *See*, *Reich v. Priba*, 890 F.Supp. at 593; *see also*, *Doty v. Elias*, 733 F.2d 720, 723 (10th Cir. 1984) ("Since plaintiffs could wait tables only during the restaurant's business hours, [the defendant] essentially established plaintiffs' work schedules."). Defendants wielded exclusive control over all of the meaningful aspects of running the business. Plaintiffs, on the other hand, controlled none of them. In other words, Plaintiffs' earning were "inextricably linked to those conditions over which defendants ha[d] complete control." *Reich v. Priba*, 890 F.Supp. at 593. The control factor weighs in favor of finding Plaintiffs to be employees.

(b). Plaintiffs did not invest in the business

Plaintiffs made no investment whatsoever in the business. Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6. Rather, only Powers and the other officers of Pasha invested in the business. Powers Depo., p. 22, ll. 2-22. Powers was himself the single largest investor in the business. Powers Depo., p. 11, l. 22-p. 12, l. 4. This factor falls squarely in favor of finding Plaintiffs to be employees.

(c). Only Defendants stood to make profits or sustain losses from the business

Not surprisingly (given their lack of investment), Plaintiffs had no opportunity to share in the profits or losses of the business. Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6.

Defendants controlled the key determinants of profit and loss, such as controlling promotion and advertising, setting drink prices, cover charge prices and drink comp policies. Powers Depo., p. 38, ll. 5-13; Gray Dec., ¶ 6; Fisher Dec., ¶ 6; Nichols Dec., ¶ 6. The only money Plaintiffs stood to earn were the tips from the Bar's customers. Powers Depo., p. 51, ll. 3-14; p. 82, l. 24-p. 83, l. 6; Gray Dec., ¶ 3; Fisher Dec., ¶ 3; Nichols Dec., ¶ 3.

By establishing the hours of operation, determining prices, setting the atmosphere and coordinating advertising, Defendants enjoyed the greatest opportunity for profit and shouldered the greatest risk of loss from the business. *Reich v. Priba*, 890 F.Supp. at 593. On the other hand, the tips Plaintiffs earned from the Bar's customers were more analogous to earned wages than a return for risk on capital investment. *Id.* (citing *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1050-51 (5th Cir. 1987), *cert. denied*, 484 U.S. 924 (1987)). This factor weighs heavily in favor of Plaintiffs being employees.

(d). Plaintiffs' jobs did not require specialized skill

Plaintiffs' positions as bartenders did not require any specialized skill. *See* Gray Depo., p. 13, l. 25-p. 14, l. 18. Granted, the better Plaintiffs performed their jobs the more tips they may have stood to earn. "This argument, however, is true in any employment relationship: an individual can always improve her chances for greater earnings by using initiative and skill to perform to the best of her ability." *Reich v. Priba*, 890 F.Supp.at 593. Moreover, the ability to converse with clientele in an effort to generate a larger tip is not the type of initiative and skill courts consider important. *Id.* (citing *Mr. W Fireworks*, 814 F.2d at 1053). Customer rapport "much more closely parallels 'efficiency' " than initiative." *Reich v. Priba*, 890 F.Supp. at 593 (quoting *Usery*, 527 F.2d at 1314). This factor is clearly in Plaintiffs' favor.

(e). Permanency of the relationship

Plaintiffs' employment with Defendants was undoubtedly part-time. Defendants also make much of the fact that they allowed Plaintiffs to tend bar at other establishments and that their schedules at the Bar were flexible. "A relatively flexible work schedule alone, however, does not make an individual an independent contractor rather than an employee." *Doty*, 733 F.2d at 723 (citing *Castillo v. Givens*, 704 F.2d 181, 189-90 (5th Cir. 1983); *Usery*, 527 F.2d at1312-13). Courts must make allowances for those operational characteristics that are unique or intrinsic to the particular business or industry and to the workers in that industry. *Reich v. Priba*, 890 F.Supp. at 593 (quoting *Mr. W Fireworks*, 814 F.2d at 1054) (citing *Mitchell v. John R. Cowley & Bro., Inc.*, 292 F.2d 105, 108 (5th Cir.1961)). The Fifth Circuit has explained that "'[e]ven if the freedom to work for multiple employers may provide something of a safety net, unless a worker possesses specialized and widely-demanded skills, that freedom is hardly the same as true economic independence.'" *Reich v. Priba,* 890 F.Supp. at 593 (quoting *McLaughlin v. Seafood, Inc.*, 861 F.2d 450, 452-53 (5th Cir. 1988)). "[T]he question this court must resolve is whether a [worker's] freedom to work when she wants and for whomever she wants reflects economic independence, or whether the freedoms merely mask the economic reality of dependence." *Martin v. Priba Corp.*, 1992 WL 486911, *3 (N.D.Tex. Nov. 6, 1992) (citing *Mednick*, 508 F.2d at 301-02).

Plaintiffs were not, for example, marquee entertainers in business for themselves. They were bartenders who worked in Defendants' bar. Naturally, part-time workers like Plaintiffs usually must seek additional employment opportunities in order to make a living. Although Plaintiffs' relationship with Defendants may have lacked a rigid schedule or the exclusivity normally associated with full-time employment, these truths are merely indicative of the night

club industry and the workers it employs. Moreover, Plaintiffs worked for Defendants on a more-or-less steady and reliable (albeit part-time) basis rather than on a project-by-project, on-again-off-again basis. *See*, *Cromwell*, 2009 WL 3254467 at *3. To suggest (as Defendants do) that these realities make Plaintiffs more entrepreneur than employee stretches the boundaries of common sense and runs afoul of the remedial purposes of the FLSA's expansive definition of "employee." Viewed in proper context, this factor falls strongly in Plaintiffs' favor.

<u>(f). Plaintiffs performed an integral function of Defendants' business</u>

Though courts should examine all of the foregoing factors, the list is non-exhaustive. *Cornerstone America*, 545 F.3d at 343. Many courts also consider whether the job function performed by the alleged employee is an integral part of the defendant's business. *Dole v. Snell*, 875 F.2d 802, 811 (10th Cir. 1989) (collecting cases). For example, in *Snell* a group of cake decorators sued a bakery and its owners under the FLSA. *Id.* at 803. The defendants claimed (and the district court agreed) that the decorators were independent contractors outside coverage of the FLSA. *Id.* In reversing the district court, the *Snell* court noted (in addition to the foregoing factors) that "the work performed by the decorators is obviously integral to the business of the [defendants] . . . [who] are in the business of selling cakes which are custom decorated." *Id.* at 811.

Likewise, bartenders such as Plaintiffs were an integral and indispensible part of Defendants' business of running a bar. Powers agreed that Plaintiffs and the other bartenders were an integral part of the business. Powers Depo., p. 79, ll. 1-10. This factor, too, weighs heavily in Plaintiffs' favor.

### 4. *Powers' Position That Plaintiffs Agreed To Earn No Wages Is Meaningless*

Powers takes the position that Plaintiffs knew all along that they were independent contractors and that they accepted the pay arrangement. *See, e.g.*, Doc. 36, p. 3. Plaintiffs dispute this was the case. Gray Dec., ¶ 10; Fisher Dec., ¶ 9; Nichols Dec., ¶ 9. Nevertheless, even if Powers' position is accepted as the truth he gains no traction.

"The FLSA is designed to defeat rather than implement contractual arrangements. If employees voluntarily contract to accept $2.00 per hour, the agreement is ineffectual." *Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1544-45 (7th Cir. 1987) (citations omitted). The Supreme Court has consistently and repeatedly held that FLSA rights cannot be waived or abridged by contract or practice. *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 740 (1981) (collecting cases). In fact, the purposes of the FLSA "require that it be applied even to those who would decline its protections." *Tony and Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 302 (1985).[5] This is true because "[i]f an exception to the Act were carved out for employees willing to testify that they performed work 'voluntarily,' employers might be able to use superior bargaining power to coerce employees to make such assertions . . .", or to waive their protections under the Act." *Id.* (citing *Barrentine*, 450 U.S. 728); *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)).

## C. Powers Was An "Employer" Along With Pasha

### 1. *Powers' Involvement With Pasha*

Despite his protestations that he had nothing to do with Pasha's business, Powers was an officer of Pasha "[f]rom formation until the end." Powers Depo., p. 5, ll. 3-12. Powers invested

---

[5] *Tony and Susan Alamo Found.* was a case brought by the Secretary of Labor in which the covered employees actually sided with the employer and opposed coverage under the FLSA. *Tony and Susan Alamo Found.*, 471 U.S. at 302.

over one-hundred-thousand dollars in Pasha. Powers Depo., p. 9, l.11-p. 10, l. 5. In fact, Powers was Pasha's largest single investor. Powers Depo., p. 11, l. 22-p. 12, l. 4. As the largest investor, Powers desired and instructed the Bar's management to provide him with nightly reports of the Bar's gross sales. Powers Depo., p. 23, l. 10-p. 24, l. 5.

Powers personally handled the build-out (and thus the look and atmosphere) of Pasha's premises. Powers Depo., p. 7, ll. 12-23. Powers personally participated in the hiring of Pasha's first general manager, Ritchey. Powers Depo., p. 8, ll. 2-23. Likewise, Powers personally participated in the decision to let Ritchey go because "[h]e was too expensive. The club wasn't making money." Powers Depo., p. 8, l.10-p. 9, l. 7. Powers was personally involved in hiring Gray as the Bar's second general manager. Powers Depo., p. 83, l. 7-p. 84, l. 10. Powers was involved in setting Gray's pay rate as the general manager. Powers Depo., p. 83, l. 25-p. 84, l. 22. Powers and his cronies vested both of the general managers with complete authority over staffing matters. Powers Depo., p. 46, ll.16-22. Although he may not have been at the Bar on a daily basis, Powers maintained a set of keys to the Bar. Powers Depo., p. 21, ll. 21-23. Powers and his guests received special "VIP" treatment when they visited the Bar. Powers Depo., p. 47, l. 19-p. 49, l. 3.

Powers learned that Pasha would not be profitable during the second week of its operation. Powers Depo., p. 52, ll. 7-11. Nevertheless, Powers contributed more money to Pasha during the first month to keep the business running. Powers Depo., p. 52, ll. 12-15. In fact, Powers and the other officers allowed Pasha to continue operating (and those who worked there to continue working) another sixteen months despite Powers' knowledge that it was a losing proposition. Powers Depo., p. 52, ll. 7-11. In the end, though, Powers and the other

officers of Pasha made the financial decision to shut the business down. Powers Depo., p. 86, l. 15-p. 87, l. 21.

*2. Powers' Involvement With Plaintiffs*

Powers occasionally discussed the amount of money the bartenders were earning in tips when he was at the Bar. Powers Depo., p. 51, ll. 3-14. For their part, Plaintiffs understood that Powers was one of their bosses. Gray Dec., ¶ 8; Fisher Dec., ¶ 8; Nichols Dec., ¶ 8. Plaintiffs knew Powers was one of the owners of the Bar and (understandably) believed that they had to take direction Powers. Gray Dec., ¶ 8; Fisher Dec., ¶ 8; Nichols Dec., ¶ 8. Although Powers was not at the Bar on a daily basis, he occasionally came to the Bar while Plaintiffs were working. Gray Dec., ¶ 8; Fisher Dec., ¶ 8; Nichols Dec., ¶ 8. Powers also occasionally would direct Plaintiffs' work. Gray Dec., ¶ 8; Fisher Dec., ¶ 8. When Powers was in the Bar he received 'VIP' treatment such as complimentary drinks for himself and for his guests. Gray Dec., ¶ 8; Fisher Dec., ¶ 8.

Finally, about a month after Gray finished his bartending stint at the Bar, Powers contacted him and asked if he could fill in for a week at the Bar. Gray Dec., ¶ 9. The general manager at the time, Julian Ritchey, was going to be out of town. *Id.* Powers asked Gray to fill in for him while he was gone. *Id.* Gray agreed to fill in and Powers hired him for the week. *Id.*

*3. Powers' Actions Establish He Was Plaintiffs' Employer*

"The FLSA defines an 'employer,' in part, as 'any person acting directly or indirectly in the interest of the employer.'" *Quintanilla v. A & R Demolitina, Inc.*, 2005 WL 2095104, *6 (S.D.Tex. Aug. 30, 2005) (quoting 29 U.S.C. § 203(d)). Thus, the FLSA contemplates both individual liability and the possibility of multiple employers. *Id.* at *6-7. This includes a situation where the employers are associated with one another, directly or indirectly, with respect

to the employment of the employee because one employer controls, is controlled by, or is under common control with the other employer. *Id.* at *7 (citing 29 C.F.R. § 791.2(b)). Powers fits squarely within this definition based upon his relationship and control of Pasha as well as his dealings (direct and indirect) with Plaintiffs.

(a). Powers' financial control over the business is almost conclusive in itself

Numerous courts have considered financial control over a corporation to be a significant factor in making the employer status determination under the FLSA. *Goetz v. Synthesys Techs., Inc.*, 286 F.Supp.2d 796, 801 (W.D.Tex. Sep. 25, 2003) (collecting cases). Moreover, "[w]hen significant financial control has been coupled with a decision to keep a failing business in operation, as Plaintiffs allege in this case, courts are even more inclined to find 'employer' status." *Goetz*, 286 F.Supp.2d at 801-02 (citing *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir.1983), *Dole v. Simpson*, 784 F.Supp. 538, 545-46 (S.D.Ind. 1991)). In fact, the *Simpson* court went so as far as to say that when an individual with substantial financial control decides to keep a failing business in operation (and its workers working), employer status is almost conclusive. *Goetz*, 286 F.Supp.2d at 801-02 (citing *Simpson*, 784 F.Supp. at 545-46).

Powers invested more in the Bar than anyone else. Powers instructed management to provide him with nightly sales numbers. Powers plunged more money into the enterprise even after he had concluded it was a losing proposition. Nevertheless, he allowed the Bar to stay in business, and its employees to continue working, for well over a year thereafter. Powers decided to let Ritchey go when he determined Ritchey was too costly. In the end, Powers decided to shut the business down because of financial reasons. The Court would be justified in finding Powers to be and "employer" on these facts alone.

(b). Powers was sufficiently involved in Plaintiffs' employment

Powers stresses that he did not exert day-to-day control over the Bar's operations and Plaintiffs' work. "[S]uch control is not required. 'Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control 'do [ ] not diminish the significance of its existence.'" *Goetz*, 286 F.Supp.2d at 800-01 (quoting *RSR Sec. Svcs.*, 172 F.3d at 139 (quoting *Donovan v. Janitorial Servs., Inc.*, 672 F.2d 528, 531 (5th Cir.1982))). The fact that Powers did not personally set Plaintiffs' work hours, determine their pay rates, supervise them, assign their job tasks or negotiate any aspect of their employment is not dispositive, even if true. *Goetz*, 286 F.Supp.2d at 801. This is true because Powers need only act "indirectly" with respect to Plaintiffs' employment. *See*, *Quintanilla*, 2005 WL 2095104, *6 (S.D.Tex. Aug. 30, 2005) (quoting 29 U.S.C. § 203(d)).

It is undisputed that Powers was personally and actively involved in hiring Pasha's management staff. Powers Depo., p. 8, ll. 2-23; p. 83, l. 7-p. 84, l.10. Likewise it is undisputed that Powers and the other officers delegated to the management staff complete authority over staffing and payroll matters. Powers Depo., p. 46, ll.16-22. The fact that Powers hired individuals who were in charge Plaintiffs' employment is a strong indication of "employer" status. *See*, *RSR Sec. Svcs.*, 172 F.3d at 140 (citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir.1984)).

Further, the evidence shows that Powers did, in fact, have some direct involvement with Plaintiffs' employment. As noted, *supra*, Plaintiffs knew Powers was one of the owners of the Bar and understood him to be one of their bosses. Powers occasionally came to the Bar while Plaintiffs were working and, sometimes, would direct their work. Powers received 'VIP' at the

Bar when he was there. Powers discussed with some of the bartenders the amount of tips they earned. Powers also personally hired Gray to fill in for Ritchey for a week when he was out of town.

When viewed as a whole, the evidence before the court is overwhelming. Powers (largely shown by his own testimony) possessed and exerted more than enough control over Plaintiffs' employment to come within the purview of the FLSA's definition of "employer." The Court must find as a matter of law that Powers was an "employer" along with Pasha.[6]

**D. Defendants Violated The FLSA's Minimum Wage Provisions**

Defendants did not pay Plaintiffs any wages for working as a bartender at the Bar. Powers Depo., p. 51, ll. 3-14; p. 82, l. 24-p. 83, l. 6.[7] None of the tips Plaintiffs earned, regardless of the amount, are "wages" for purposes of satisfying the FLSA's minimum wage provisions. *Reich v. Priba*, 890 F.Supp. at 595. Defendants' failure to pay at least the minimum hourly wage per hour worked violated the minimum wage provisions of the FLSA. *Id.*; 29 U.S.C. § 206(a).

**E. Because Defendants Did Not Keep Accurate Records Of The Hours Plaintiffs Worked, The Court Should Credit Plaintiffs' Testimony**

Defendants did not keep contemporaneous records of the hours Plaintiffs worked. Gray Dec., ¶ 4; Fisher Dec., ¶ 4; Nichols Dec., ¶ 4. When an employer has failed to maintain records of the hours its employees work, the employees' initial burden is to make out a prima facie case that the FLSA has been violated and to produce some evidence to show the amount and extent of the violation. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985)

---

6 Again, the FLSA contemplates both individual liability and the possibility of multiple employers. *Quintanilla*, 2005 WL 2095104 at *6-7. Plaintiffs need not show that Powers and Pasha were Plaintiffs *only* employers to the exclusion of anyone else (*e.g.*, Pasha's other officers). Plaintiffs are only required to show that Powers was *one* of Plaintiffs "employers" for liability to attach.

7 Pasha also admitted this fact by defaulting.

(citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)) (other citations omitted). Employees meet this burden if they produce sufficient evidence to show the amount and extent of their work as a matter of "just and reasonable inference." *Beliz*, 765 F.2d at 1330 (citing *Mt. Clemens*, 328 U.S. 687-88) (other citations omitted). The burden then shifts to the employer to come forward with "evidence to negative the reasonableness of the inference to be drawn from the employees' evidence." *Beliz*, 765 F.2d at 1330 (citing *Mt. Clemens*, 328 U.S. 687-88 n.52) (other citations omitted). The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with the FLSA. *Beliz*, 765 F.2d at 1330 (citations omitted). In other words, Plaintiffs may testify to the approximate hours they worked based upon their recollections. *See*, *Beliz*, 765 F.2d at 1330-31 (citations omitted).

**F. Plaintiffs' Damages**

Plaintiffs are entitled to the full minimum wage for every hour they worked. 29 U.S.C. § 216(b). Through July 23, 2007, the federal minimum wage was $5.15 per hour. *See* Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) & 29 U.S.C. § 206(a)(1). From July 24, 2007 through July 23, 2008, the federal minimum wage was $5.85 per hour. *Id.* From July 24, 2008 forward, the federal minimum wage was $6.55 per hour. *Id.*[8]

*1. Unpaid Minimum Wages*

(a). Nicholas Gray

As a bartender from February through September 2007, Gray worked every Thursday, Friday and Saturday night. Gray Dec., ¶ 5. Gray worked these hours for approximately thirty-one weeks. *Id.* Gray' hours worked were from 9:00 p.m. until approximately 4:00 a.m. *Id.*

[8] On July 24, 2009 the federal minimum wage became $7.25 per hour. *See* Fair Minimum Wage Act of 2007, Pub. L. 11-28 (May 25, 2007) & 29 U.S.C. § 206(a)(1). That date, however, is beyond the scope of any of the claims in this lawsuit.

Therefore, Gray worked approximately twenty-one hours per week over the thirty-one weeks for a total of 651 unpaid hours. *Id.* Gray's unpaid wages may be summarized below:

| **Period** | **Federal MW** | **Hours Worked** | **Unpaid Wages** |
|---|---|---|---|
| 2/1/07 – 7/23/07 (25 weeks) | $5.15/hour | 21/week | $2,703.75 |
| 7/24/07 – 9/7/07 (6 weeks) | $5.85/hour | 21/week | $737.10 |
| | | | |
| | | **Total Unpaid Wages:** | $3,440.85 |

(b). Christi Fisher

Fisher's normal shift was from 9:00 p.m. to approximately 3:30 or 4:00 a.m., three days a week. Fisher Dec., ¶ 5. Therefore, Fisher worked approximately nineteen-and-a-half hours per week. *Id.* Fisher worked this schedule for approximately seventy-five weeks for a total of 1462.50 unpaid hours. *Id.* Fisher's unpaid wages may be summarized below:

| **Period** | **Federal MW** | **Hours Worked** | **Unpaid Wages** |
|---|---|---|---|
| 3/15/07 – 7/23/07 (18 weeks) | $5.15/hour | 19.5/week | $1,807.65 |
| 7/24/07 – 7/23/08 (52 weeks) | $5.85/hour | 19.5/week | $5,931.90 |
| 7/24/08 – 9/1/08 (5 weeks) | $6.55/hour | 19.5/week | $638.63 |
| | | **Total Unpaid Wages:** | $8,378.18 |

(c). Jessica Nichols

Nichols' normal shift was from 9:00 p.m. to approximately 2:00 a.m. every Thursday. Nichols Dec., ¶ 5. Nichols would also occasionally pick up a similar shift on a Friday or Saturday as needed. *Id.* Therefore, Nichols worked approximately seven-and-a-half hours per week. *Id.* Nichols worked this schedule for approximately fourteen weeks for a total of 97.5 unpaid hours. *Id.* Nichols' unpaid wages may be summarized below:

| **Period** | **Federal MW** | **Hours Worked** | **Unpaid Wages** |
|---|---|---|---|
| 4/17/08 – 7/23/08 (13 weeks) | $5.85/hour | 7.5/week | $570.38 |
| 7/24/08 – 7/26/08 (1 week) | $6.55/hour | 7.5/week | $49.13 |
| | | | |
| | | **Total Unpaid Wages:** | $619.51 |

2. *Liquidated Damages*

A successful plaintiff under the FLSA is entitled to an award of an equal amount of unpaid wages as liquidated damages. 29 U.S.C. § 216(b); *Bernard v. IBP, Inc.*, 154 F.3d 259, 267 (5th Cir. 1998). Liquidated damages are the rule rather than the exception given the strong presumption under the statute in favor of doubling damages. *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999) (citation omitted).[9] Thus, Plaintiffs are entitled to an award of liquidated damages in an amount equal to their unpaid wages set forth above.[10]

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs request that the Court grant them summary judgment in their favor and against Defendants on all claims pursuant to Federal Rule of Civil Procedure 56.

---

9 It is Defendants "substantial burden" to disprove the appropriateness of a liquidated damages award. *Bernard*, 154 F.3d at 267.

10 Plaintiffs are also entitled to an award of attorneys' fees and costs. 29 U.S.C. § 216(b). At the appropriate time after judgment Plaintiffs will submit their application for attorneys' fees and their bill of costs. *See, e.g.*, *Straus v. DVC Worldwide, Inc.*, 484 F.Supp.2d 620, 633 (S.D.Tex. 2007) ("Attorneys' fee claims are generally resolved at the close of the case, after both liability and damages have been determined.").

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: **/S/ Michael K. Burke**
Michael K. Burke
State Bar No. 24012359
S.D. of Texas No. 24356
1415 Louisiana Street, Suite 2125
Houston, Texas 77002
(713) 877-8788 – Telephone
(713) 877-8065 – Facsimile
mburke@brucknerburch.com

Robert R. Debes, Jr.
Texas Bar No. 05626150
S.D. of Texas No. 12308
**DEBES LAW FIRM**
17 South Briar Hollow Lane, Ste. 302
Houston, Texas 77027
(713) 623-0900 – Telephone
(713) 623-0951 – Facsimile
bdebes@debeslaw.com

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing document was filed and served via the Southern District's CM/ECF system in accordance with the Federal Rules of Civil Procedure on October 15th, 2009.

Christopher M. Cammack
2100 West Loop South, Suite 1075
Houston, Texas 77027

**/S/ Michael K. Burke**

Michael K. Burke