**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

NICHOLAS GRAY,                              )
             Plaintiff                   )
                             )
vs.                                         )          CIVIL ACTION NO. 08-03369
                             )
PASHA ENTERTAINMENT GROUP, L.L.C. )
and MICHAEL WARREN POWERS,                  )
             Defendants                  )

**DEFENDANT, MICHAEL WARREN POWERS' RESPONSE TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

      COMES NOW, Defendant, MICHAEL WARREN POWERS ("POWERS"), who files this

Response to Plaintiffs' Motion for Summary Judgment, showing unto the court the following:

<u>Timely Filing of This Response</u>

   1.  This Response is being filed on November 13, 2009, in compliance with this court's

Order extending the deadline to that date (Doc. 51).

<u>POWERS' Defensive Summary Judgment Evidence</u>

   2.  In response to Plaintiffs' Motion for Summary Judgment, Defendant POWERS relies upon

the following:

     (a)  Affidavit of MICHAEL WARREN POWERS attached to his Motion for
          Summary Judgment on file, which is incorporated herein by reference;

     (b)  Declaration of Kathleen Powers attached hereto as Defendant's Exhibit "A";

     (c)  Declaration of Stephen Powers attached hereto as Defendant's Exhibit "B";;

     (d)  Deposition excerpts of John W. Ritchey, Jr. attached hereto as Defendant's
          Exhibit "C";

     (e)  Credit card statements marked Exhibit #1 to the Ritchey deposition transcript.

1

and attached hereto as Defendant's Exhibit "D";

### False Assertions of Fact Made by Plaintiffs in Their Motion

3.   Plaintiffs have made a large number of false assertions of fact in their Motion for Summary Judgment, which  are illuminated by testimonial and documentary evidence sources completely separate and apart from Defendant POWERS himself, except a few in POWERS' deposition excerpts attached to Plaintiffs' own Motion whereby Plaintiffs  misrepresent what the excerpts actually say.  These false assertions include, but are not limited to the following matters:

(a)   Plaintiffs represent to this court that Pashaa Ultra Lounge opened in February, 2007 (page 1, Section II, 1st paragraph).  However, the testimony of the Bar's first general manager, John W. Ritchey, Jr., is that the Bar opened in April, 2007 (page 8, line 17 of Ritchey transcript);

(b)   Plaintiffs represent to this court that Defendant POWERS was involved in the interior design of the Bar (page 2, 1st sentence).  However, John W. Ritchey, Jr. testifies that POWERS did not design the Bar, but one Christian Bruckner did (page 27, line 22 through page 28, line 1 of Ritchey transcript);

(c)   Plaintiffs represent to this court that Defendant POWERS participated in the hiring of John W. "Julian" Ritchey (page 2, 2nd sentence).  However, Mr. Ritchey testifies that only Christian Bruckner interviewed him (page 7, lines 19-24;  page 8, line 10 of Ritchey transcript)   and that it was Mr. Bruckner who hired Mr. Ritchey (page 9, lines 4-9, Ritchey transcript);

(d)   Plaintiffs represent to this court that Defendants (plural) owned the Bar's lease (page 2, 2nd paragraph, 1st sentence).  However, John W. Ritchey testifies that Defendant PASHA ENTERTAINMENT GROUP, L.L.C. owned the Bar's lease (page

2

9, line 22 through page 10, line 15, Ritchey transcript), and page 1 of the Bar's

is attached to Stephen Powers' Declaration, which names PASHA ENTERTAIN-

MENT GROUP, L.L.C. as Lessee and one Christian Bruckner as a guarantor;

(e)  Plaintiffs represent to this court that Defendants (plural) set the Bar's hours of

operation (page 2, 2nd paragraph, 3rd sentence).  However, John W. Ritchey testi-

fies that he had "full run of the club" and was in charge of "pretty much every-

thing that went on at the club."  (page 9, lines 11-13, Ritchey transcript);

(f)  Plaintiffs represent to this court that Defendants (plural) owned the alcohol invent-

ory (page 2, 2nd paragraph, last sentence), yet the very passage of POWERS' dep-

osition testimony relied upon by Plaintiffs for that representation indicates only

PASHA ENTERTAINMENT GROUP (Powers transcript, page 29, lines 11-13);

(g)  Plaintiffs represent to this court that Plaintiff GRAY's work at the Bar began in

February, 2007 and Plaintiff FISHER's work began in March, 2007 (page 3, 1st

paragraph, lines 2-4.  However, the Bar's credit card statements attached as

Ritchey Deposition Exhibit #1 reveal no sales in February and March, 2007, and

John W. Ritchey testifies that a Bar's sales consist of approximately 80% credit

card purchases (Ritchey transcript, page 63, lines 3-4);  These same credit card

statements show how many days of each month during the year 2007 that the

night club was open, and the number of days does not come near three days per

week, or 12 days per month, on average, as testified to in the Plaintiffs' Declara-

tions;  The testimony of John W. Ritchey, Jr. is that the credit card merchant

statements attached hereto as Exhibit "D" represent the totality of the days on

which the night club was open in 2007 (Ritchey transcript, page 37, line 8-13);

3

(h)  In her sworn Declaration attached to Plaintiff's Motion for Summary Judgment
(Exhibit 4 to said Motion, at paragraph 9),Plaintiff FISHER testifies that "Michael
and Kathleen Powers wrote me a letter of recommendation" as a "loyal and de-
pendable employee."  However, the letter itself attached to FISHER's Declaration
shows that it bears the name of Kathleen Powers only, and the attached Declara-
tion of Kathleen Powers attaches an e-mail chain between FISHER, Kathleen
Powers and Stephen Powers, that totally excludes Michael Powers in all respects;

(i)  Plaintiffs represent to this court that Defendants (plural) determined the hours
when the bar was open for business, citing all three of the Plaintiffs' attached
Declarations, at paragraph 6 in each.  However, a plain reading of each para-
graph 6 reveals no mention of Michael Powers or anyone else setting the hours
of business, only that each of the Plaintiffs did not set the hours;

(j)  Plaintiffs represent to this court that Defendants (plural) wielded exclusive control
over all of the meaningful aspects of running the business (page 7, 2nd paragraph).
However, John W. Ritchey testifies that Defendant POWERS was not involved
with day-to-day operations (Ritchey transcript, page 25, lines 15-18); that it
was Mr. Ritchey himself who was "in charge of pretty much everything that
went on at the club" (Ritchey transcript, page 9, lines 10-13);  that Michael
Powers did not supervise workers, did not control work schedules, did not con-
trol work conditions, did not determine pay rates, did not fire anyone, and did not
give directions to workers (Ritchey transcript, page 26, line 1 through page 28,
line 25);  and, Mr. Ritchey had discussions several times a week about club oper-
ations with Stephen Powers and Kathleen Powers, which testimony excludes

4

Michael Powers from those regular discussions (Ritchey transcript, page 55, lines 8-10);

(k)  Plaintiffs represent to this court that Defendants (plural) controlled promotion and advertising, set drink prices, and set cover charge prices (page 8, 1st sentence). However, John W. Ritchey testifies that it was he who set drink prices and cover charge prices (Ritchey transcript, page 20, lines 1-10) and that the only thing Michael Powers did in the way of advertising and promotion was to refer Mr. Ritchey to a printer (Ritchey transcript, page 25, lines 19-25);

(l)  Plaintiffs represent to this court that their positions as bartenders did not require any specialized skill (page 8, 3rd paragraph, 1st sentence), yet John W. Ritchey testifies that all bartenders had to be certified by the Texas Alcoholic Beverage Commission (Ritchey transcript, page 22, line 24 through page 23, line 6);

(m)  Plaintiffs represent to this court that Michael Powers was the largest single investor among the members of PASHA ENTERTAINMENT GROUP, L.L.C. (page 12, 1st paragraph) and that his alleged status as such meant he had "substantial financial control" over keeping the Bar in business as compared to closing it down (page 14, 2nd paragraph).  However, this representation distorts the degree of Michael Powers' investment of roughly $100,000.00 (Powers transcript, attached to Plaintiffs' Motion, page 10, lines 3-6) versus the $80,000.00 investment of Stephen Powers (per his attached Declaration);

(n)  Plaintiffs represent to this court that Michael Powers and the other officers of PASHA ENTERTAINMENT GROUP, L.L.C. allowed the Bar to continue operating for a 16 month period, during which time Plaintiffs represent the Bar was a

5

losing proposition (page 12, last paragraph).  However, John W. Ritchey testifies that he was a signatory on the Bar's checkbook, that the Bar sustained itself in paying its bills out of regular revenue, and that the Bar did not lose money during Mr. Ritchey's stint as general manager (Ritchey transcript, page 24, lines 14-23);

(o)  Plaintiffs represent to this court that Michael Powers "desired and instructed" the Bar's management to provide him with nightly reports of gross sales (page 12, 1st paragraph), referring to Mr. Powers' deposition excerpts attached to Plaintiffs' Motion at page 23, line 10 through page 24, line 5.  However, that passage of testimony discusses the content of a contract which Plaintiff GRAY signed after he ceased being merely a bartender for Pashaa Ultra Lounge.  In footnote 2 at the bottom of  page 3 of Plaintiffs' Motion, Plaintiffs admit that "Gray does not make any claim in this lawsuit for the period of time he was Pasha's general manager." The aforementioned passage of Michael Powers' deposition testimony does not contain any evidence of Michael Powers' "desires or instructions."  It also ig-nores the testimony of John W. Ritchey that Stephen Powers and Kathleen Pow-ers were typically sent the nightly sales receipts (Ritchey transcript, page 21, lines 11-14) and Michael Powers typically was not.  (Ritchey transcript, page 84, line 24 through page 85, line 4);

(p)  Plaintiffs represent to this court that Michael Powers was personally involved in hiring NICHOLAS GRAY as the Bar's second general manager following John W. Ritchey's stint as same (page 12, 2nd paragraph).  However, this representa-tion flies in the face of Stephen Powers' testimony, in his attached Declaration, that he is the person who hired NICHOLAS GRAY as general manger, and also

mischaracterizes the deposition testimony of Michael Powers purportedly relied upon by Plaintiff, at page 83, line 7 through page 84, line 10, wherein Michael Powers testifies that "Steve talked to him and asked him to be the manager."

<u>Genuine Issues Of Material Fact Exist, Warranting Denial of Plaintiff's Motion</u>

4.   The above-described items of summary judgment evidence before this court reveal that there exists numerous genuine issue of material fact, as to those factual matters upon which Plaintiffs claim entitlement to a Summary Judgment, which warrant denial of Plaintiffs' Motion, as courts are obliged to review all factual question in the light most favorable to the non-movant.  FRCP 56, *Broussard vs. Parish of Orleans,* 18 F.2d 644 (5th Cir. 2003).

<u>Plaintiffs Omit Any Evidence, or Even Any Discussion of the "Commerce" Requirement of the FLSA in Their Motion for Summary Judgment, as Plaintiffs Cannot Prove Up Same</u>

5.   Plaintiffs cannot demonstrate entitlement to a Summary Judgment, as a matter of law, without first establishing that they have an actionable FLSA claim, which requires a showing that each Plaintiff was engaged in commerce or in the production of goods for commerce. *Esquivel vs. Hillcoat Properties, Inc.,* 484 F.Supp.2d 582 (W.D. Tex. 2007).   "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof.  29 U.S.C. § 203 (b).

6.   To determine if an employee performed work that was "engaged in commerce or in the production of goods for commerce", courts must focus its inquiry on the activities of the employee and not on the business of the employer.  *Mitchell vs. Lublin McGaughy and Associates,* 358 U.S. 207, 211, 79 S.Ct. 260, 3 L.Ed.2d 243 (1959).

7.   The case of *Monelus vs. Tocodrian,* 598 F.Supp.2d 1312 (S.D. Fla. 2008) involves an employee's work as a cook in a restaurant, which POWERS contends is quite analogous to a

bartender in a night club.  There was no dispute in *Monelus,* Id., that the particular restaurant was purely local, just like Pasha Lounge, and did not engage in interstate commerce.  The court's holding in *Monelus* was that even if the Plaintiff's work as a cook meant that he potentially handled food that at one point travelled in interstate commerce, that is not sufficient for "interstate commerce" coverage required by the Fair Labor Standards Act.

    8. A similar case to *Monelus*  is *Russell vs. Continental Restaurant, Inc.,* 430 F.Supp.2d 521 (D. Md. 2006).  The Plaintiff *Russell* was a waitress at a restaurant who claimed that she and other employees "handled goods…which were moved in or produced for commerce and transported to the restaurant across interstate lines."  However, Plaintiff *Russell* conceded that any goods she handled ultimately found their way to the patrons of Pagaso Restaurant where she worked, and were served to the patrons and consumed by the patrons at that restaurant.  Ms. *Russell's* handling of the goods (food) did not move the goods *interstate.*  The holding in *Russell* was that the Plaintiff was not "engaged in commerce" within the jurisdictional reach of the Fair Labor Standards Act.  All three of the Plaintiffs in the case at bar are similarly outside the reach of the FLSA.

    9.  An analysis of the definition of "goods" is also instructive in showing that the Plaintiffs in this case are not engaged in commerce.   "Goods" are defined by the FSLA as "goods, wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, *but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof* (emphasis added).  29 U.S.C. § 203(i).  The beverages and food consumed by the former patrons of Pasha Lounge, and served by Plaintiffs,  are excluded from the definition of "goods." The lack of the "commerce" requirement being met serves as a complete bar to any recovery to Plaintiffs under the FLSA, in and of itself.

10.   John W. Ritchey, Jr., the former general manager of the nightclub, has testified that the inventory of food and beverages served to customers was purchased in Houston, Texas and that customers were served at only one location, 2010 McKinney, Houston, Texas (Ritchey transcript, page 19, lines 13-25).   Thus, there was no "interstate commerce" element to the three Plaintiffs' services performed, as alleged employees.

11.   Two particular subjects arose at the deposition of John W. Ritchey, Jr., which Plaintiffs might argue to this court creates the necessary "interstate commerce" element, that being:  (1)  that the  credit card merchant statements attached hereto as Defendant's Exhibit "D" have an address of Global Payments in Owings Mills, Maryland, and;  (2)  the nightclub general manager routinely sent, via internet, nightly sales reports to Kathleen Powers and Stephen Powers, who reside in Florida.  Both of these strained notions of "commerce" have been shot down by case law.

12.   In *Polycarpe vs. E & S Landscaping Service,* 572 F.Supp.2d 1318 (S.D. Fla. 2008), it was held that an employer's purchase of gasoline via credit card, which was issued by an out-state credit card company, and the employer's utilization of bank accounts administered by banks with out-of-state headquarters, did not satisfy the interstate commerce requirement under the FLSA, as these items were not used by the employer to transact business in interstate commerce, and the employer's business was purely local in nature, just like Pashaa Ultra Lounge.

13.   In *Bien-Aime vs. Nanak's Landscaping, Inc.,* 572 F.Supp.2d 1312 (S.D. Fla. 2008), it was held that a purely local landscaping business did not affect interstate commerce by maintaining a website available to anyone with Internet access, by its use of cellular phones, its use of telephones, and its purchase of gasoline for its trucks, using credit cards from national companies.

<u>POWERS Did Not "Financially Control" the Business</u>
<u>Such That He Reaches "Individual Employer" Status</u>

9

14.    Plaintiffs' reliance on *Goetz vs. Synthesis Technologies, Inc.,* 286 F.Supp.2d 796 (W.D. Tex. 2003) is misplaced, as the facts in *Goetz* are significantly distinguished from the case at bar. Unlike one Walter Loewenbaum in the *Goetz* case, Defendant POWERS did not participate in *any* aspects of Pasha Lounge's daily operations (*Goetz,* at page 801;  Ritchey transcript, page 25, lines 17-18);  Defendant POWERS did not play any role in personnel decisions (*Goetz,* at page 801; Ritchey transcript, page 10, lines 16-22);  Defendant POWERS did not "infuse any capital" during any alleged time of business loss (*Goetz,* at page 801;  Ritchey transcript, page 94, lines 12-14); Neither Defendant POWERS, nor any of his co-members in PASHA ENTERTAINMENT GROUP, L.L.C., made any "conscious decision" to keep the nightclub operating while it was "failing", because Pashaa Ultra Lounge was not a "failing" concern, it sustained itself and paid its bills from regular, ongoing revenue, and it did not lose money while general manager Ritchey was there (*Goetz,* at page 801;  Ritchey transcript, page 24, lines 11-23);  The owners of Pashaa Ultra Lounge were "equals" rather than Defendant POWERS being the almighty control figure (Ritchey transcript, page 99, line 23 through page 100, line 7), and ;  Defendant POWERS' capital contribution of roughly $100,000.00 is not significantly different from Stephen Powers' capital contribution of $80,000.00  (Declaration of Stephen Powers, attached hereto;  POWERS deposition transcript, page 10, lines 3-6).

15.    Defendant POWERS' Affidavit, attached to his Motion for Summary Judgment, and which is also relied upon in defending Plaintiffs' Motion for Summary Judgment, stands uncontroverted on the basis on the basis of any non-speculative evidence regarding:  his  never supervising  or giving  instructions to any person working there, including but not limited to NICHOLAS GRAY, JESSICA NICHOLS and CHRISTI FISHER, his  not knowing most of the people who worked there,  his lack of knowledge of  their job duties, his lack of defining anyone's

job duties, his lack of any right to hire or fire anyone, his lack of control over anyone's work schedules or conditions of employment, and his omission to maintain employment records on anyone. Any evidence before this court regarding anyone's thoughts or assumptions about Defendant POWERS' alleged authority over them is purely speculative and is not based on any direct evidence of occurrences, conversations directly with POWERS, or documents proving same.

16.  The case of *Dole vs. Simpson,* 784 F.Supp 538 (S.D. Ind. 1991) does not help Plaintiffs any more than the *Goetz* case does not help them. There is no evidence from Plaintiffs before this court, because it does not exist, that Defendant POWERS made a decision to keep Pashaa Ultra Lounge operating at a time when it was allegedly failing. That argument in and of itself is yet another mis-represented, unsupported assertion from the Plaintiffs in this lawsuit.

17.  The proper and relevant factors for courts to analyze in determining if an individual is an "employer" for purposes of the FLSA are whether the alleged employer: (1) had power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined rate and method of payment; and (4) maintained employee records. *Herman vs. RSR Security Services, Ltd.,* 172 F.3d 132 (2nd Cir. 1999), *Powell vs. Carey International, Inc.,* 483 F.Supp.2d 1168 (S.D. Fla. 2007). POWERS does not match any of these factors.

18.  Another line of federal cases hold that in order for a "corporate officer" (POWERS was a member of a limited liability company, PASHA) to be personally liable under the FLSA for unpaid wages, the officer "must either be involved in the day-to-day operations or have some direct responsibility for the supervision of the employee." *Patel vs. Wargo,* 803 F.2d 632 (11th Cir. 1986), *DeLeon-Granados vs. Eller & Sons Trees, Inc.,* 581 F.Supp.2d 1295 (N.D. Ga. 2008). POWERS does not match any of these criteria either.

11

19.   For the legal and factual reasons stated   hereinabove, POWERS is not an "employer" of any of the Plaintiffs herein, which is established as a matter of law.  The lack of  "employer " status being met as to POWERS serves as a complete bar to any recovery to Plaintiffs under the FLSA, in and of itself, just as does the lack of "commerce" requirement stated above, regardless of whether or not Plaintiffs have been deemed "employees" against PASHA ENTERTAINMENT GROUP, INC. because of a procedural default by the now dissolved limited liability comapny

<u>Plaintiffs' Claimed Damages Are Not Credible</u>

20.   Plaintiffs' Motion for Summary Judgment is devoid of any time records from the Plaintiffs regarding when they actually worked.  The credit card merchant statements attached hereto as Defendant's Exhibit "D" controverts the number of days all three of the Plaintiffs claimed to have worked.  While NICHOLAS GRAY testified in his Declaration attached to Plaintiffs' Motion for Summary Judgment that he was  required to work every Thursday, Friday and Saturday night, John  W. Ritchey, Jr., who was MR. GRAY's direct supervisor, testifies to the contrary (Ritchey transcript, page 15, lines 15-20).   Mr. Ritchey has also testified that the nightclub did not open until April of 2007 whereas Plaintiffs are seeking wage compensation dating back to February, 2007 (Ritchey transcript, page 8, line 17).

21.   Defendant POWERS' rebuttal evidence is sufficient to "negative the reasonableness of the inference drawn from the employees' evidence", per one of the very cases cited by Plaintiffs, *Beliz vs. W.H. McLeod & Sons Packing Co.,* 765 F.2d 1317 (5th Cir. 1985).

22.   While Plaintiffs contend they are entitled to payment full minimum wage, despite their being "tipped employees" as defined by the FSLA, if there is an express agreement that tips should be kept by the "employee", tips may be credited 50% toward the minimum wage rate. *Barcellona vs. Tiffany English Pub, Inc.,* 597 F.2d 464 (5th Cir. 1979).  In his Affidavit attached to Plaintiff's

Motion for Summary Judgment, John W. Ritchey, Jr. testifies that there was such an agreement with all of the bartenders and waitresses at Pashaa Ultra Lounge.

23. Defendant POWERS does not believe this court will reach the stage of awarding Plaintiffs any damages. However, Defendant POWERS contends that the candor with which Plaintiffs have requested damages is similar to the candor with which Plaintiffs have contended liability.

Conclusion/Prayer

24. WHEREFORE, Defendant POWERS prays that Plaintiffs' Motion for Summary Judgment be in all things denied.

Respectfully submitted,

By:__/s/ *Chris Cammack*_____
    Christopher M. Cammack
    State Bar No. 03682100
    Federal I.D. No. 6193
    2100 West Loop South, Suite 1075
    Houston, Texas 77027
    Telephone: 713-960-1921
    Telecopier: 713-960-1922

    ATTORNEY FOR DEFENDANT,
    MICHAEL WARREN POWERS

**CERTIFICATE OF SERVICE**

I hereby certify a true and correct copy of the foregoing Response to Motion for Summary Judgment has been served electronically and by first class mail upon Plaintiff's counsel of record, Robert R. Debes, Jr., 17 South Briar Hollow Lane, Suite 302, Houston, Texas 77027 and Michael K. Burke, 1415 Louisiana, Suite 2125, Houston, Texas 77002 on November 13, 2009.

13

__/s/ Chris Cammack_____
Christopher M. Cammack